**James O. DELUHERY, Plaintiff,**

v.

**MARINE COOKS AND STEWARDS UNION, AFL–CIO, an unincorporated association, Defendant.**

**No. 1230–61–EC.**

United States District Court
S. D. California,
Central Division.

Dec. 3, 1962.

See also 199 F.Supp. 270.

Jack Levine, Los Angeles, Cal., for plaintiff.

Brundage, Hackler & Flaum, Los Angeles, Cal., for defendant.

CRARY, District Judge.

Plaintiff, a member of defendant Union for approximately ten years, seeks to enjoin said Union from carrying out its Trial Committee's recommendations, to wit, the expelling of plaintiff from membership in the Union unless plaintiff is afforded a reasonable time to prepare a defense; is served with written, specific charges; and afforded a fair hearing. The charges against plaintiff, as detailed by a Bill of Particulars, alleged misconduct on the part of plaintiff by way of mishandling Union funds, unauthorized use of Union records, and acts injurious to the defendant Union as set forth in the charges, which consist of seven counts, as amplified in the Bill of Particulars. The plaintiff asserts that unless defendant Union is enjoined from carrying out the recommendations of its Trial Committee plaintiff will lose all rights as a member of the Union in violation of the constitution of the defendant Union and in violation of Section 101(a) (5) of the Landrum-Griffin Act. [29 U.S.C. § 411(a) (5)] The injunction is sought under Section 102 of the said Act. [29 U.S.C. § 412]

It is the position of the plaintiff that the evidence in the instant action requires the court to grant the relief prayed on the theory that the case is within an exception to the general rule, that the Union administrative remedies as prescribed and set forth in its constitution (Deft.'s Ex.G) must first be asserted before seeking relief in the United States District Court. See also 29 U.S. C. § 411(a) (4).

Plaintiff contends that he is within such an exception to the general rule because, he asserts,

a. Failure of the Trial Committee to allow plaintiff reasonable time to prepare his case for trial,

b. The exhaustion of administrative remedies is not mandatory,

c. That it would be futile and fruitless to exhaust administrative remedies,

d. That the exhaustion of administrative remedies would subject plaintiff to irreparable injury in a practical sense, and

e. He has been "disciplined" as a result of findings and recommendations of the Trial Committee.

The court finds from the evidence and the agreed facts as set forth in the pretrial order:

1. The charges (Pltf.'s Ex. 1) against plaintiff were received by him on August 18, 1961, at approximately 10 a. m. aboard the SS Matsonia on its return to Los Angeles from Honolulu.

2. That the plaintiff herein was employed by the shipowner at the time.

3. That plaintiff shipped out for Honolulu aboard the Matsonia on or about 4 p. m. on August 19, 1961.

4. That on August 20, 1961, plaintiff addressed a letter to the said Trial Committee stating, among other things, that he had received the charges, was not notified of the date of the trial as required by the constitution of the Union (Deft.'s Ex. G), and that the charges did not inform him "adequately of what wrong I have done nor do the charges state the time and place of such alleged violations." Again in the letter he states " * * * I reiterate, how could I defend myself against these charges, when the allegations are not specific. They do not state adequately the alleged wrong, neither do they state the time or place." Said letter, mailed August 24, 1961, was received by defendant on or about August 25, 1961.

5. On August 26, 1961, plaintiff received aboard ship a radiogram from the Trial Committee, Wilmington, California, stating that his trial would take place on August 29, 1961, at 2 p. m.

6. A Bill of Particulars which plaintiff testified gave him sufficient information as to the charges to allow him to prepare for a defense if given two weeks to accomplish such preparation, was served on plaintiff by Joseph Goren, Port Agent of Wilmington Branch of defendant Union, on August 29, 1961, at about 10:30 a. m., following docking of the SS Matsonia at Wilmington about 10 a. m. on said date.

7. The members of the Wilmington Branch of the Union voted to accept the charges in their original form (Pltf.'s Ex. 1) but did not vote on the charges as amplified by the Bill of Particulars. The court concludes that no vote of the Wilmington Branch was required after the filing of the Bill of Particulars.

8. Plaintiff appeared before the Trial Committee at 2 p. m. on August 29, 1961, with three members of the Union, who, the testimony shows, were to be witnesses to what occurred at the proceedings before the Trial Committee but not as witnesses to testify on behalf of plaintiff as to the merits of the charges. One of the said three witnesses, to wit, Scott Unroe, was to assist plaintiff in the pending matter.

9. The Summary of the Trial Committee's hearing (Deft.'s Ex. A), with respect to what occurred at the August 29th hearing, notes on page 3 of the Summary that James Deluhery stated that he objected to three members serving on the Committee, naming said members, but that the said Deluhery refused to state his reasons for his contention that said members were disqualified on the grounds he was not required to do so by the Union constitution. The Summary further observes that the said Deluhery thereafter also objected "that the charges presented against him are not sufficient to apprise him of the time and place of the commissions of the offenses alleged as committed by him" and that he did thereafter advise the Trial Committee they could go on with the trial and left the premises with his selected assistant, Scott Unroe, and witnesses Montalbo and Martella.

The plaintiff and witness Unroe testified in substance that plaintiff stated, among other things, at the hearing that he received the Bill of Particulars only 3½ hours prior to the hearing and could not possibly prepare a defense in that time. Plaintiff did not make a formal request for continuance of trial but the court finds that specific request was not necessary in the circumstances, and that plaintiff's statements to the Trial Committee were sufficient to require the Trial Committee to continue the trial to give plaintiff a reasonable time to prepare his defense after receipt of the Bill of Particulars, and that a continuance of twenty-four hours did not give plaintiff a reasonable time to prepare his defense in the circumstances.

10. After the plaintiff left the hearing the Trial Committee postponed the trial until August 30, 1961, at 2 p. m., and plaintiff was notified of the postponement at about 8:45 a. m., August 30, 1961.

11. Plaintiff did not appear at the hearing on August 30th and was tried in absentia, as evidenced by the Summary of the trial. (Deft.'s Ex. A) The plaintiff was found guilty of all charges on all seven counts and it was recommended by the Trial Committee that he be expelled.

12. Plaintiff sailed for Honolulu aboard, the SS Matsonia at 4 p. m., August 31, 1961.

13. Copies of the Summary of the trial (Deft.'s Ex. A), which appears to have been dated in September but does not set forth the day, were forthwith sent to all Branches of the Union for consideration and action on the findings and recommendations of the Trial Committee in accordance with Section 5 of Article XIV of the Union constitution. (Deft.'s Ex. G) No action has been taken re the said findings and recommendations by any Branch of the Union pending judgment in the instant case.

14. It appears from the evidence that prior to the filing of the charges against plaintiff herein there had been controversy among the Union members and candidates for Port Agent of the Wilmington Branch of the Union and that among the candidates for Port Agent were plaintiff herein and Joseph Goren, the Port Agent of said Branch at the time the charges were filed and the hearings of the pre-trial committee with respect thereto.

### THE ISSUES

The issues of fact and law, as agreed by the parties and as set forth on page 4 of the pre-trial order, are as follows:

A. Issues of fact:

1. Was plaintiff given a reasonable time to prepare his defense?

2. Was plaintiff afforded a full and fair hearing?

3. Does plaintiff have a meritorious defense to the charges lodged against him?

B. Issues of law:

1. Was the plaintiff obliged to exhaust his administrative remedies before appealing to this Court for relief?

2. Was plaintiff "disciplined" within the meaning of Section 101(a) (5) of the Landrum-Griffin Act?

3. Has plaintiff waived any of his objections with respect to adequacy of notice and the conduct of the hearing?

As to the issues of fact, the court finds that the plaintiff was not given a reasonable time to prepare his defense, and that by reason thereof, was not afforded a full and fair hearing. Plaintiff testified at the trial that he had a meritorious

defense to the charges lodged against him and said testimony is uncontradicted.

With respect to the issues of law, the court concludes,

1. That plaintiff was in the circumstances obligated to exhaust his administrative remedies before any right to relief by this court,

2. Plaintiff has not received "other discipline" within the meaning of Section 101(a) (5) of the Landrum-Griffin Act [29 U.S.C. § 411], and

3. Plaintiff has not waived any of his objections with respect to the adequacy of notice and conduct of the hearing.

■ With respect to "other discipline", if the plaintiff's position is sound it would appear that a finding of guilt by a Trial Committee with recommended punishment would in all cases constitute "other discipline" within the Act, which would allow the courts to intervene for the purpose of ascertaining whether any irregularities occurred in the proceedings of the Trial Committee and grant relief if so found. This would virtually make ineffective and superfluous the review and appellate procedures provided for by the Union constitution. Union action didn't bar plaintiff from work.

Article XIV of the Union constitution provides for the filing of charges against a Union member, trial thereof, action by Branches of the Union on the findings and recommendations of the Trial Committee, and appeal therefrom Section 7, Article XIV, provides for Port Agent of the Branch of trial sending the record of the proceedings to Union headquarters for making of necessary copies and transmitting same to each Branch for action of its members. Section 8 refers to the majority action which may be taken by way of acceptance, rejection, or modification of the recommendations and provides that the membership of the Union, among other action, may order a new trial "after finding that substantial justice has not been done with regard to the charges." Section 10, et seq., of Article XIV sets forth a clear and specific procedure for appeal from the decision of the membership by "an accused who has been found guilty or who is under effective punishment * * *."

The parties agreed at the time of trial that plaintiff could file a written statement of his position to be read at meetings of Branches of the Union when the recommendations and findings of the Trial Committee were being considered. The Union constitution provides for plaintiff's appearance, and so forth, at any hearing on appeal. The court finds, as noted hereinabove, that although plaintiff did not specifically ask for more time to prepare for trial, that such request is to be inferred from the statements made to the Trial Committee by plaintiff on August 29, 1961, as appears from the Summary of the Trial Committee (Deft.'s Ex. A) and the testimony of plaintiff and witness Unroe herein. The record which will go to the various Branches for action does not evidence the statements of plaintiff at the hearing on August 29th to the effect that he had received the Bill of Particulars only 3½ hours prior to the hearing and could not possibly prepare a defense in that time. However, the list of exhibits set forth on pages 19 to 21 of the Summary of Proceedings of the Trial Committee (Deft.'s Ex. A) notes as item 10 on page 20 thereof, "Statement of August 29, 1961, evidencing delivery of Bill of Particulars to James Deluhery." From this and other facts in the record, it would appear to the Branches that the Bill of Particulars was served on plaintiff on August 29th. Those in charge of the proceedings apparently did not believe the charges alone were sufficient to adequately inform plaintiff of the details thereof, as he had urged in his letter of August 20th, since a Bill of Particulars setting forth details re times, places and persons involved was prepared and delivered to plaintiff as above noted.

In the circumstances, does the fact the plaintiff was not given reasonable time

to prepare for trial make it unnecessary for the plaintiff to exhaust his administrative remedies under the Union constitution, which clearly sets forth said remedies. The court concludes that the administrative remedies must be exhausted unless the circumstances noted above make the exhaustion of such remedies futile or result in injury that in a practical sense would be irreparable. The long delay in the action to be taken by the various Branches of the defendant Union on the findings and recommendations of the Trial Committee resulted by reason of the pending suit of plaintiff and was not any fault of the procedure provided for in the Union constitution.

Referring now to pertinent authorities we find the recent case of Edsberg v. Local Union No. 12, etc., 300 F.2d 785 (9th Cir., 1962). The complaint for injunction was dismissed by the trial court and the court of appeals, in affirming the dismissal, held that an exhaustion of administrative remedies was necessary in the circumstances. The plaintiff sought an order of court to uphold a vote of a meeting of the Union which was later reversed by a referendum mail vote of the entire membership. At page 787 of its opinion, the court observes, "We need not decide whether exhaustion of remedies provided by the Union is an absolute requirement before asking the federal courts to intervene in intra-union activities." Citing numerous cases, including decisions of California, federal and state courts. Thereafter at page 788, the court states, "We find here no uncertain or futile remedy offered to appellants by their own organization. In the absence of such a factual situation, we recognize and reaffirm 'the declared policy [of the courts] favoring self-regulation by unions.' Detroy v. American Guild of Variety Artists, supra at 81. The federal courts, of limited jurisdiction, cannot and should not intervene in any and every intra-union dispute."

The case of Falsetti v. Local 2026 UMW, 400 Pa. 145, 161 A.2d 882, and Allan v. Local 92 Ironworkers 47 L.R. R.M. 2214, are cited by the court on

page 788 in connection with the statement, "We find here no uncertainties or futile remedy * * *." The Pennsylvania court, in the Falsetti case, sets out certain exceptions to the exhaustion rule, as follows:

"First and foremost, a person will not be required to take intra-association appeals which cannot in fact yield remedies. If a remedy exists in theory only, it can well be considered illusory. Secondly, there is no need for a member to exhaust his internal remedies where the association officials have, by their own actions, precluded the member from having a fair or effective trial or appeal.

\* \* \* \* \* \*

"And finally, there are instances where the requirement of exhaustion of remedies would subject a member to an injury that is in a practical sense irreparable. Such a situation would arise where a person expelled from a union and suing for re-admittance would, during the interim of his appeal, be barred from working in a union shop."

The court does not find the case at bar is within any of the exceptions to the exhaustion rule as set forth hereinabove. No charges were served in the Falsetti case and the court held that there was no need to appeal where no notice was given because this error could not possibly be corrected on appeal. The court in Allan v. Local 92 Ironworkers, supra, granted declaratory relief on the grounds that there was no intra-union procedure for relief which was reasonable. Here again the instant case is to be distinguished, since the administrative relief provided is adequate if adhered to by all concerned. The United States District Court, E.D.Pa., in Rekant v. Shochtay-Gasos Union Local 446, 205 F. Supp. 284, cited by plaintiff, found that the plaintiff therein had not received written specific charges. In the case at bar there is no contention that plaintiff did not receive written charges on August 18, which by Bill of Particulars on

August 29th were amplified adequately by details with respect to the time, place and persons involved. The plaintiff in the instant case urges, not that he did not receive charges duly amplified by a Bill of Particulars, but that he was not allowed reasonable time (which he testified would be two weeks) after receipt of the Bill of Particulars to prepare his defense for trial.

■ The rule appears to be well established that the exhausting of administrative remedies is not absolute as a condition to relief by the courts but that each case should be considered on its merits. It was so held in Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2nd Cir., 1961). In that case, the court intervened on finding, among other things, (p. 81) that the Union remedy was uncertain and not specifically brought to the attention of plaintiff and that the listing of plaintiff's name on a "National Unfair List" constituted "discipline" within the meaning of Section 101(a) (5) of the Act.

Penuelas v. Moreno, 198 F.Supp. 441 (U.S.D.C., S.D.Calif.1961), involved a protest against the actions of the Executive Board of the Union of which plaintiff was a member. The District Court reviews Section 101(a) (4) and holds that the exhaustion of remedies provision in that section " * * * is a prerequisite to a federal jurisdiction under Section 501(b) * * * ", (page 445). The action in the case was brought under Section 501(b). At page 445 and 446 of the opinion, the court states, "In the cases which have so far been decided, it is evident that the weight of authority holds that there is no federal jurisdiction in suits by union members on rights protected by Section 101(a) (4) where union remedies have not been exhausted." Citing cases. The court thereafter observes, "The federal decisions reflect great hesitancy to depart from the exhaustion prerequisite to jurisdiction, even in the most compelling circumstances." Citing and quoting from Detroy v. American Guild of Variety Artists, supra. At page 447

of its opinion, the court quotes a portion of an article, "The Labor-Management Reporting and Disclosure Act of 1959", which appeared in 73 Harv.L.Rev. 851, 869 (1960), as follows:

"Section 101(a) (4) thus wisely includes a proviso requiring a union member to exhaust his internal union remedies before seeking relief in court or before an administrative body. *Democratic processes atrophy when they are not exercised; union members will have no interest in improving their organization's internal adjustment procedures if they never are required to use them.* (Emphasis added.)"

The court concludes that the "good cause" prerequisite to suit under Section 501(b) was precluded by reason of the plaintiff in that case having failed to exhaust his Union remedies.

In Smith v. General Truck Drivers, etc., Union Local 467, 181 F.Supp. 14 (U.S.D.C., S.D.Calif.1960), the plaintiff Union member sought an injunction under the sections of the Labor Act involved in the case at bar on the ground he had been issued an honorable withdrawal card from the local Union without a hearing and the Union refused to withdraw the card and reinstate his membership. In his complaint he alleged that his reason for not appealing the action to the Executive Board was "that any attempt at such an appeal would be futile" (page 17). It will be noted, however, that after the filing of the complaint an appeal was taken. The court points out that the refusal to reinstate plaintiff was not an actionable wrong under the statute since it refers back to the alleged unwarranted issuance of the withdrawal card, which issuance occurred before the effective date of the acts involved. Thereafter, in discussing the exhaustion of administrative remedies, the court refers to California cases, to wit, Holderby v. International Union of Operating Engineers, etc., 45 Cal.2d 843, 291 P.2d 463 (1955), Mooney v. Bartenders Union Local 284, 48 Cal.2d 841, 313 P.2d 857, 64 A.L.R.2d 1154 (1957), and Cason v.

Glass Blowers Association, 37 Cal.2d 134, 231 P.2d 6, 21 A.L.R.2d 1387 (1951).

In the Smith case, supra, Judge Yankwich, at page 18, quotes from the Holderby case, supra, as follows:

"He falls squarely within the rule that when an internal appeal is open to him he has no right to invoke the aid of the courts." Also, on page 18, the court states,

"In Mooney, supra, the court held that the procedure could be dispensed with because access to the union records was denied. In another California case the court found that the member had not been given an opportunity to deny the accusations upon which reinstatement into a union was refused. Cason v. Glass Bottle Blowers Ass'n, supra 37 Cal.2d at page 146, 231 P.2d at page 13 [21 A.L.R.2d 1387].

 The allegations of the Complaint before us that the Board of Review is prejudiced against the plaintiff is not a sufficient showing of futility, *even under these cases.* More, as we are not bound by State law, we decline to read exceptions into the specific language of the federal statute under discussion, which makes exhaustion of the intra-union remedy provided by the union's constitution or by-laws a condition precedent to the institution of court action. * * *

"If one were permitted to dispense with a necessary administrative step before invoking the jurisdiction of federal courts, which are courts of limited jurisdiction, upon the mere assertion that the tribunal was biased or had ruled or would rule unfavorably and had no power to act, every such requirement could be disregarded at will."

On page 19, the court further observes "the right to decide includes the right to decide wrongly. An erroneous decision is not a deprivation of rights amounting to a denial of due process."

Referring again to the case of Mooney v. Bartenders Union Local 284, 48 Cal. 2d 841, on p. 843, 313 P.2d 857, on p. 858, 64 A.L.R.2d 1154, on which case plaintiff places strong reliance, the Supreme Court of California, notes that provision in Union constitutions requiring the exhaustion of internal remedies is generally recognized by the courts as binding on the members, citing Holderby v. International Union of Operating Engineers, etc., 45 Cal.2d 843, 291 P.2d 463, also cited hereinabove, and thereafter states, 48 Cal.2d on page 844, 313 P.2d on page 858, 64 A.L.R.2d 1154, "This rule, however, is subject to certain exceptions. Thus the internal procedure must be such as will afford an accused member substantial justice, and further pursuit of internal relief is excused *when a union violates its rules for review or when invocation of those rules would be futile.*" (Emphasis ours) (Citing Cason v. Glass Bottle Blowers Ass'n, supra, and Holderby v. International Union of Operating Engineers, etc., supra.) The court does not find either of said exceptions applicable in the instant case. In granting the writ of mandate in the Mooney case, the court pointed out that the plaintiff therein exhausted all administrative remedies " * * * except one, i. e., he did not appeal to the executive board of International from the adverse decision of its president." (48 Cal.2d at page 843, 313 P.2d at p. 858, 64 A.L.R. 2d 1154). And 48 Cal.2d on page 844, 313 P.2d on page 859, 64 A.L.R.2d 1154, of the opinion, the California Supreme Court states,

"Among the factors to be considered in determining whether interference by the courts in the internal affairs of a union is warranted on the basis of public policy is the nature of the right asserted by the member. The inspection of records is merely a preliminary step, and, if the manner, time and place are reasonable, the examination cannot harm any proper union activity. Only after examination of the records can it be determined whether

or not conditions exist which require correction. To deny a member access to the records and require him to exhaust all internal remedies in the preliminary matter of inspection would unduly hamper the member's right and possibly defeat the purpose of the investigation."

If Unions, having adequate procedures provided for in their constitution to protect the rights of their members if properly administered, are not to be allowed by the courts to administer their procedures because of error in the initial steps, then the general rule requiring exhaustion of such procedures is nullified. If the courts are to review the first steps in administrative procedures taken by the Union, and enjoin them if error be found, then there would be no need to provide for review and appellate procedures in Union constitutions. The court concludes that, as stated by the California Supreme Court in the Holder-by case, supra, 45 Cal.2d on page 847, 291 P.2d on page 466, of that opinion, "It is only when the organization violates its rules for appellate review or upon a showing that it would be futile to invoke them that the further pursuit of internal relief is excused. The violation of its own rules which inflicts the initial wrong furnishes no right for direct resort to the court."

Judgment is ordered for the defendant as prayed.

What has been said may serve as findings of fact and conclusions of law [F.R. Civ.P. 52(a)] upon which to predicate judgment in favor of defendant. Defendant is requested to prepare judgment in accordance with Rule 7, Rules of the United States District Court for the Southern District of California, West's Ann.Code.

This opinion is not to be considered as a final judgment.

It is further ordered that the Clerk shall this day serve copies of this order by United States mail upon the parties appearing in this cause.